STATE OF NORTH CAROLINA v. LESTER BARNETT, RICKY BARNETT AND CARL WILDER

No. 23A81

(Filed 8 March 1983)

1. **Criminal Law § 76.7— in-custody statements—admissibility—sufficiency of evidence and findings**

Although there were conflicts in the evidence presented in a hearing on a motion to suppress defendants' in-custody statements, the trial court properly admitted the in-custody statement of each defendant where the court resolved the evidentiary conflicts in favor of the State and made findings supported by the evidence that each defendant was verbally advised of his constitutional rights before being questioned by the police; each defendant stated he understood his rights and did not wish to have an attorney present; each defendant executed a waiver of rights form; each defendant then gave an oral statement which was reduced to writing and signed by him; at the time of interrogation by law enforcement officers, each defendant was in full control of his mental and physical faculties, was coherent and gave reasonable answers to questions asked; no defendant was given any promise or offer of reward or was threatened by law officers or anyone else to persuade or induce him to make a statement; and each defendant understood and expressly waived his rights to remain silent and have counsel during the periods of interrogation.

**2. Searches and Seizures § 16— search of house —consent by third party with common authority**

A warrantless search of the house in which defendants were arrested was lawful on the basis of the voluntary consent of a third party who possessed common authority, at least, over the premises, where the evidence showed that the third party leased the house, that she lived there with her daughter and paid all the rent, and that although defendants stayed there on occasion, they paid no rent.

**3. Criminal Law § 75.13— incriminating statements made to person other than police officer**

Incriminating statements about a robbery-murder made by defendants to the victim's cousin while defendants and the cousin were being "booked" on criminal charges in the magistrate's office were admissible against defendants where there was no evidence that the police requested the cousin to engage in conversation with defendants, an officer in fact instructed the cousin not to talk to defendants and rebuked him for doing so, and it was several days later that police learned from the cousin's relatives what defendants had said to the cousin.

**4. Criminal Law § 92.1— consolidation of charges against three defendants**

Armed robbery and murder charges against three defendants were properly consolidated for trial where the evidence showed that each defendant participated in the robbery and that decedent was killed with a deadly weapon during commission of the robbery. G.S. 15A-926(b)(2)a.

**5. Criminal Law § 74.3— admissibility of confessions of codefendants**

In a joint trial of three defendants for a robbery-murder, the confession of each of the three defendants was properly admitted into evidence where all parts of each defendant's confession which referred to or implicated any other defendant were first deleted. G.S. 15A-927(c)(1).

**6. Criminal Law § 101.4— jury review of confessions in courtroom —discretion of court**

The trial court properly exercised its discretion in permitting the jury to review in the courtroom written confessions which had been admitted into evidence, the consent of defendants being required only when the jury is permitted to take writings or exhibits to the jury room. G.S. 15A-1223(a), (b).

**7. Criminal Law § 75— voluntariness of confession —no issue for jury**

The law in North Carolina does not require that the issue of voluntariness of a confession be submitted to the jury.

**8. Criminal Law § 113.7— robbery-murder —instructions on common purpose to commit murder —supporting evidence**

In a prosecution of three defendants for murder committed in the perpetration of an armed robbery, the trial court did not err in instructing the jury on the "common purpose" of two or more persons to commit the crime of murder on the ground that the evidence showed only a common purpose to

commit armed robbery, since the jury could have inferred from the facts of this case and from the nature of the crime of armed robbery that all three defendants had a common purpose to murder if murder became necessary during the course of the robbery to overcome the victim's resistance, to eliminate the victim or others as potential witnesses, or to aid in their escape.

**9. Criminal Law § 113.7— instructions on acting in concert**

The trial court's instruction that the jury should convict defendant if he acted in concert with both codefendants rather than with either of the codefendants imposed a greater burden on the State than it was required to meet and was not prejudicial to defendant.

**10. Criminal Law §§ 66.9, 66.16— pretrial photographic identification—in-court identification—admissibility in evidence**

The trial court properly concluded that a witness's pretrial photographic identification of one defendant as a participant in a robbery-murder was not unnecessarily suggestive, that her in-court identification of defendant was of independent origin and not tainted by the pretrial identification, and that both the pretrial and the in-court identifications were admissible in evidence where the court found upon supporting voir dire testimony that the witness was told that some people had been arrested in connection with the robbery and shooting; she was shown several sets of photographs but was not told photographs of any of the persons who had been arrested were in the group she received; although the group contained photographs of all three defendants, she identified only a photograph of one defendant; when she was at the crime scene, the witness saw such defendant face to face at a distance of only several feet and had a better opportunity to observe such defendant than she did the other defendants; the witness had previously described the smallest of the robbers as being 5 feet 6 or 7; the defendant identified by the witness was approximately that height, while the other defendants were more than 5 feet 10 inches tall; and the witness testifed that her in-court identification of one defendant was based solely upon what she saw at the crime scene and not on any photographs which she had seen of him.

Justices MITCHELL, MARTIN and FRYE did not participate in the consideration or decision of this case.

BEFORE *Judge Lacy H. Thornburg,* presiding at the 1 December 1980 Criminal Session of MECKLENBURG Superior Court, and a jury, defendants were found guilty of armed robbery and murder in the first degree. A sentencing hearing pursuant to G.S. 15A-2000 was conducted for defendants Barnett and the jury recommended that they receive life sentences. No sentencing hearing was conducted for defendant Wilder because the state had no aggravating circumstances to submit in his case. Each defendant was sentenced to life imprisonment on the murder

charge.[1] All defendants appealed to this Court pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Ralf F. Haskell, Assistant Attorney General, for the state.*

*David B. Sentelle for defendant appellant Lester Barnett.*

*Lawrence Hewitt and Henry H. Wilson, III for defendant appellant Ricky Barnett.*

*Paul J. Williams for defendant appellant Carl Wilder.*

EXUM, Justice.

In this appeal defendants' numerous assignments of error relate primarily to the joinder of their cases for trial, the failure to suppress certain testimony, the admission of testimony, instructions to the jury, and denial of their motions to set the verdicts aside and for new trials. We find no merit in any of the assignments and affirm the judgments.

The state's evidence tends to show:

Early in the morning of 13 August 1980 Chalmers H. (Butch) Wallace was working on the third shift as a clerk at a Fast Fare store on Nations Ford Road in Charlotte. Shortly after 2 a.m. Cheryl Little entered the store to make some purchases. After selecting the items, she carried them to the cash register where Wallace was working as cashier. As she paid for her purchases, two young black males entered the store.

She then went out the front door of the store and entered her car which was parked near the door. Just before entering the car she heard a loud noise. She looked in the store and saw one of the men who had entered the store "go down on top of the cashier"; the other man had a gun and was looking at her. As she sped away from the store, a man was standing on the outside and shot at her. After arriving at her home she telephoned the police and reported what she had seen. She identified defendant Ricky Barnett as one of the men she saw in the store.

---

1. Since the first degree murder verdicts were based on the felony-murder rule, no judgments were entered on the armed robbery verdicts.

About 2:15 a.m. on 13 August 1980, Officer Dinkins of the Charlotte Police Department was dispatched to the Fast Fare store in question. When he arrived there he found no one in the store except the clerk who was lying on his back on the floor. Both cash registers were "rifled open and had been shuffled through." Blood was on the right side of the clerk's shirt. Dinkins radioed for assistance, including medical aid, but upon their arrival the medical team determined that the clerk, Wallace, was dead.

On 14 August 1980 police arrested defendants Barnett at a residence at 323 Katonah Avenue in Charlotte. They arrested defendant Wilder on the same day. The three defendants were taken to police headquarters, advised of their rights and questioned. Each of the defendants admitted participation in the robbery, and Lester Barnett admitted shooting the store clerk. Their written, signed statements, with references to their codefendants deleted, were admitted into evidence. Weapons matching the description of those that defendants said they used were found in the house where defendants Barnett were arrested.

Defendants Ricky Barnett and Carl Wilder presented evidence but it is not set out in the record on appeal. Defendant Lester Barnett offered no evidence.

I.

ERRORS ASSIGNED BY ALL DEFENDANTS.

[1] All defendants assign as error the denial of their motions to suppress the in-custody statements made by them. We find no merit in these assignments.

Before trial each defendant moved to suppress all statements allegedly made by him to police officers following his arrest. Judge Johnson conducted a hearing on the motions and heard extensive evidence presented by the state and defendants. Following the hearing Judge Johnson found the pertinent facts that: Before being questioned by the police each defendant was verbally advised of his constitutional rights as required by *Miranda*;[2] each defendant stated he understood his rights and did not wish

---

2. *Miranda v. Arizona*, 384 U.S. 436 (1966).

to have an attorney present; each defendant executed a "Waiver of Right to Remain Silent and Right to Counsel During Interview" form; each defendant then gave an oral statement which was reduced to writing and signed by him; at the time of interrogation by law enforcement officers, each defendant was in full control of his mental and physical faculties, was coherent and gave reasonable answers to questions asked; no defendant was given any promise or offer of reward or was threatened by law enforcement officers or anyone else to persuade or induce him to make a statement; each defendant was fully and properly advised of his constitutional rights; and each defendant understood and expressly waived his rights to remain silent and have counsel during the periods of interrogation.

Upon his findings of fact, Judge Johnson made these conclusions of law: None of the constitutional rights of any defendant were violated by his arrest or interrogation; the statement of each defendant was made freely, voluntarily and understandingly; each defendant fully understood his constitutional right to remain silent and his right to counsel; and each defendant freely, knowingly, intelligently and voluntarily waived his rights and made the incriminating statements in question. The court denied the motions to suppress.

In *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E. 2d 540, 548 (1982), this Court said:

Following a hearing on a motion to suppress, it is incumbent on the trial court to make findings of fact and conclusions of law. *State v. Jackson*, 292 N.C. 203, 232 S.E. 2d 407, *cert. denied*, 434 U.S. 850 (1977). The court's findings, if supported by competent evidence, are conclusive on appeal. *State v. Herndon*, 292 N.C. 424, 233 S.E. 2d 557 (1977). If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal. *Id.* If *all* the evidence tends to show that investigators made promises or threats to a suspect whose confession is the product of hope or fear generated by such promises or threats, the confession will be ruled involuntary as a matter of law. *State v. Pruitt*, 286 N.C. 442, 455-58, 212 S.E. 2d 92, 100-02 (1975), and cases there cited.

In the case *sub judice*, the findings of fact made by Judge Johnson are fully supported by the evidence and the findings support the conclusions of law. While there were conflicts between some of the evidence presented by the state and evidence presented by defendants, it was incumbent on the trial judge to resolve the conflicts after hearing the evidence and observing the demeanor of the witnesses. *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970). The trial court has resolved the evidentiary conflicts in favor of the state; we are bound by this resolution. *State v. Herndon*, 292 N.C. 424, 233 S.E. 2d 557 (1977).

The assignments of error are overruled.

## II.

### ERRORS ASSIGNED BY DEFENDANTS BARNETT.

### A.

[2] Defendants Barnett assign as error the denial of their motions to suppress as evidence items seized as a result of a search of the premises of Margaret Ware. These assignments have no merit.

Judge Johnson found as facts that: On 13 August 1980 Officer Guerette received information indicating that defendants Barnett had participated in the robbery in question; upon checking the warrant desk at the Charlotte Police Department, he discovered outstanding arrest warrants charging defendants Barnett with rape; on the morning of 14 August he and several other officers went to three addresses on Katonah Avenue looking for defendants Barnett in order to serve the rape warrants on them; upon arriving at 323 Katonah Avenue, the officers knocked and announced their presence; defendant Lester Barnett came to the door, looked out the window, and then retreated to a rear bedroom; shortly thereafter they were admitted into the living room by Margaret Ware; the officers asked for defendants Barnett; defendant Ricky Barnett was seated on a sofa in the living room but denied that he was Ricky Barnett; one of the officers knew the person on the sofa as Ricky Barnett and arrested him pursuant to the rape warrant; defendant Ricky Barnett was also informed that he was a suspect in the robbery-murder at the Nations Ford Road convenience store; the officers were then told that defendant Lester Barnett was in the rear bedroom; Officer

Frye went to the bedroom, arrested defendant Lester Barnett pursuant to the rape warrant and informed him that he was a suspect in the robbery-murder; defendant Lester Barnett was moved to the living room; the officers inquired about the ownership of the house; Margaret Ware stated she was renting the house from David Willis, she lived there with her daughter and although the Barnetts stayed there on occasion, they paid no rent: Ms. Ware then consented, both verbally and in writing, for the officers to search the premises; the officers found a .32 caliber pistol under the bed in the room in which defendant Lester Barnett was arrested and a .22 caliber pistol and a sawed-off shotgun under the cushion of a chair in the living room; they also found the other items sought to be suppressed; and the search of the premises did not disclose any clothing or personal effects belonging to either defendant.

Pursuant to these findings, Judge Johnson concluded defendants Barnett had no standing to contest the search of Margaret Ware's house, to which she had consented; and in any event the search and seizure were incident to a lawful arrest of these defendants.

The findings of fact above summarized are fully supported by the evidence presented at the voir dire hearing on defendants' motions to suppress, particularly the testimony of Officers Guerette and Frye and Margaret Ware. Thus, the findings are binding on this Court. *State v. Herndon, supra,* 292 N.C. 424, 233 S.E. 2d 557. The question remaining is whether Judge Johnson's findings support his conclusion that the evidence was admissible. We hold they do.

Assuming *arguendo* that defendants Barnett have standing to protest the search of the residence at 323 Katonah Avenue, a point we do not decide, the question becomes whether the search was permissible on either the ground that Ms. Ware had consented to it or that it was incident to a lawful arrest. In *United States v. Matlock,* 415 U.S. 164 (1974), the United States Supreme Court reaffirmed the principle "that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient

relationship to the premises or effects sought to be inspected." *Id.* at 171-72 (footnote omitted). In *Matlock* the defendant was arrested in the yard of a home in which he lived. The home was leased by a Mr. and Mrs. Marshall. It was occupied by Mrs. Marshall, several of her children including the defendant's girlfriend, Mrs. Gayle Graff, the defendant, and Gayle's three-year-old son. After arresting the defendant, several officers went to the house and requested permission to search the house for money and a gun. Mrs. Graff voluntarily consented to the search of the house, including the bedroom she shared with the defendant. The money sought was found in a diaper bag in the only closet in the bedroom.

The significant question in *Matlock* was whether there was sufficient evidence of Mrs. Graff's common authority over the bedroom to render permissible the search based on her consent. The Court concluded, *id.* at 177-78:

> It appears to us, given the admissibility of Mrs. Graff's and [defendant's] out-of-court statements, that the Government sustained its burden of proving by the preponderance of the evidence that Mrs. Graff's voluntary consent to search the east bedroom was legally sufficient to warrant admitting into evidence the $4,995 found in the diaper bag. But we prefer that the District Court first reconsider the sufficiency of the evidence in the light of this decision and opinion.

(Footnote omitted.)

In the instant case the trial court found as a fact that before searching the house the officers asked who owned the house. In response:

> Margaret Ware stated that she was renting it from David Willis. That although the Barnetts stayed there on occasion, they didn't contribute to the rent. That she lived there with her daughter and she (Margaret) paid all the rent. Margaret Ware then consented verbally and in writing for the officer to search the premises.

The trial court also found as follows:

> Although Margaret Ware stated that the Barnetts stayed there occasionally and sometimes slept in the living

room and the front and back bedrooms, a search of the premises did not reveal any clothing or personal effects of either defendant. The only articles of clothing and personal effects discovered were those of a female.

These facts are more than sufficient to support the trial court's conclusion of law that the search could be sustained on the basis of Ms. Ware's voluntary consent because she possessed common authority, at least, over the premises. Because the search is sustainable on this ground, we do not consider the question whether it also could be justified on the ground it was incident to a lawful arrest.

B.

[3] Defendants Barnett assign as error the denial of their motions to suppress the testimony of Albert Frazier relating to statements allegedly made to him by them while in custody. There is no merit in these assignments.

The record reveals that while defendants Barnett were in a magistrate's office being "booked" and committed, Albert Frazier, a cousin of the victim, Wallace, was also in the office being "booked" on a charge of carrying a concealed weapon. Defendants Barnett were standing by the wall on the opposite side of the room from the magistrate. Police Officer Smith told Frazier to stand by the wall but not to talk with the Barnetts. As Frazier was standing there, he engaged defendants Barnett in conversation. In the conversation defendants Barnett made incriminating statements relating to the robbery and murder of Wallace. Judge Johnson denied the Barnett defendants' motion to suppress Frazier's testimony and he testified at trial as a witness for the state.

While defendants Barnett concede that there is no direct evidence that Frazier was a paid police informant, or agent, at the time, they argue that he was placed beside them in the magistrate's office in order to obtain evidence against them. Relying on *Massiah v. United States*, 377 U.S. 201 (1964), defendants argue that Frazier's presence constituted a "custodial interrogation" in violation of their constitutional rights.

In *Massiah*, the defendant was indicted for violating the federal narcotics laws. He retained a lawyer, pled not guilty, and

was released on bail. Thereafter, a man named Colson was indicted for offenses related to the same matter for which Massiah was indicted. Colson was also released on bail. Several days later, and without Massiah's knowledge, Colson decided to cooperate with the government agents investigating the narcotics activities in which Massiah, Colson and others allegedly had been engaged. Colson permitted a government agent to install a radio transmitter in his automobile. Thereafter, Colson and Massiah engaged him in conversation while in Massiah's car about the matters with which they were charged. Massiah made some incriminating statements that were heard over the radio by a government agent. The agent related the statements as evidence against Massiah at his trial.

Massiah was convicted and the United States Court of Appeals for the Second Circuit affirmed. The United States Supreme Court granted certiorari and awarded Massiah a new trial. The Court held that under the Sixth Amendment's guarantee of the defendant's right to assistance of counsel, his incriminating statements, elicited by government agents after he had been indicted and in the absence of counsel, were not admissible at trial.

The case at hand is clearly distinguishable from *Massiah.* In that case Colson was without doubt a *government agent* and the decision of the Court emphasizes that fact. In the case at hand there was no evidence that the police requested Frazier to engage in conversation with defendants Barnett; in fact, Officer Smith instructed Frazier *not* to talk to the Barnetts and rebuked him when he saw Frazier was talking with them. It was several days later that police learned from Frazier's relatives what defendants Barnett had said to Frazier.

The assignments of error are overruled.

### III.

ERRORS ASSIGNED BY DEFENDANTS LESTER BARNETT AND CARL WILDER.

### A.

[4] These defendants assign as error the joinder of the charges against all defendants for trial. These assignments have no merit.

Upon written motion of the prosecutor charges against two or more defendants may be joined for trial "[w]hen each of the defendants is charged with accountability for each offense." G.S. 15A-926(b)(2)a. *See also State v. Smith*, 301 N.C. 695, 272 S.E. 2d 852 (1981); *State v. Slade*, 291 N.C. 275, 229 S.E. 2d 921 (1976). Ordinarily, motions to consolidate cases for trial are within the sound discretion of the trial court, *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death penalty vacated*, 429 U.S. 809 (1976), and absent a showing that a joint trial has deprived an accused of a fair trial, the exercise of the court's discretion will not be disturbed on appeal. *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968).

Each of the defendants was charged on 12 August 1980 with the robbery and the murder of Chalmers H. Wallace. The evidence showed that each defendant participated in the robbery and that Wallace was killed with a deadly weapon during the commission of the robbery. That being true, each defendant was "charged with accountability" for the felony-murder of Wallace and was subject to conviction for first degree murder. G.S. 14-17; *State v. Shrader*, 290 N.C. 253, 225 S.E. 2d 522 (1976).

We hold the court did not abuse its discretion in consolidating the cases for trial. The question of defendants' alleged deprivation of a fair trial is hereinafter discussed.

### B.

[5] Lester Barnett and Wilder each assigns as error the admission into evidence of the "sanitized" statement of his codefendants. There is no merit in this assignment.

These defendants argue that inasmuch as the trial court, over their objections, allowed the state's motion for joinder of their trials, the admission into evidence of the confessions of all defendants violated their constitutional rights under *Bruton v. United States*, 391 U.S. 123 (1968).

In *Bruton*, there was a joint trial of Evans and Bruton for armed postal robbery. Evans did not testify and a postal inspector testified with respect to Evans' oral confession that Evans and Bruton had committed the robbery. The trial judge instructed the jury that the confession evidence was not admissible against Bruton and the jury could not consider it in determining Bruton's

guilt or innocence. Both defendants were convicted. The United States Court of Appeals for the Eighth Circuit set aside Evans' conviction on the ground that his admissions to the postal inspector were tainted by his prior unconstitutional confession, but the Court affirmed Bruton's conviction because of the trial court's limiting instructions. *Id.* at 124-25.

The United States Supreme Court allowed Bruton's petition for certiorari and reversed the lower court. The Supreme Court held that since Evans did not testify, the introduction of his confession added substantial weight to the government's case in a form not subject to cross-examination, thereby violating Bruton's Sixth Amendment Right of Confrontation. The Court also concluded that this encroachment on Bruton's Right of Confrontation could not be avoided by instructing the jury to disregard the confession in Bruton's case.

In *State v. Fox, supra,* 274 N.C. at 291, 163 S.E. 2d at 502, this Court, after recognizing the *Bruton* principle, said:

> The result is that in joint trials of defendants it is necessary to exclude extrajudicial confessions unless all portions which implicate defendants other than the declarant can be deleted without prejudice either to the State or the declarant. If such deletion is not possible, the State must choose between relinquishing the confession or trying the defendants separately.

*See also State v. Davis and State v. Fish,* 284 N.C. 701, 202 S.E. 2d 770, *cert. denied,* 419 U.S. 857 (1974); G.S. 15A-927(c).

In the case at hand, the record clearly discloses that the trial court admitted the confessions into evidence only after modifying them as mandated by *Fox* and in compliance with G.S. 15A-927(c) (1).[3] All parts of each defendant's confession that referred to or implicated any other defendant were deleted.

---

3. This section reads:

(c) Objection to Joinder of Charges against Multiple Defendants for Trial; Severance.—

(1) When a defendant objects to joinder of charges against two or more defendants for trial because an out-of-court statement of a co-defendant makes reference to him but is not admissible against him,

The assignment of error is overruled.

## C.

[6] Defendants Lester Barnett and Wilder assign as error the trial court's permitting the jury to examine and read their "sanitized" written confessions. These assignments have no merit.

After the jury had gone to the jury room and began their deliberations, they returned to the courtroom with some questions and a request that they be allowed to review defendants' written confessions which had been admitted into evidence. The court would not allow the jury to take these statements to the jury room but did allow the jury to review the statements in the courtroom.

The action of the trial judge is clearly authorized by G.S. 15A-1233(a), which provides in pertinent part:

The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury *and may permit the jury to reexamine in open court the requested materials admitted into evidence.* [Emphasis added.]

Defendants do not contend that they did not have notice as provided by the quoted statute. They argue that the judge should not have allowed the jury to reexamine the statements without their consent. Consent is required, however, only when the jury is allowed to take writings or exhibits *to the jury room.* G.S. 15A-1233(b).[4]

---

the court must require the prosecutor to select one of the following courses:

a. A joint trial at which the statement is not admitted into evidence; or

b. A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted so that the statement will not prejudice him; or

c. A separate trial of the objecting defendant.

4. This statute provides, in part: "(b) Upon request by the jury and with the consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence."

We hold that the trial judge properly exercised his discretion and the assignments of error are overruled.

### D.

[7] Defendants Lester Barnett and Wilder assign as error the failure of the trial court to submit to the jury the issue of the voluntariness of defendants' confessions. There is no merit in these assignments.

Defendants concede that under current law as restated in *State v. Miley*, 291 N.C. 431, 230 S.E. 2d 537 (1976), the trial judge is not required to submit to the jury the issue of voluntariness, but they ask us to reconsider *Miley* in light of the decision in *United States v. Inman*, 352 F. 2d 954 (4th Cir. 1965).

In *State v. Miley, supra*, 291 N.C. at 434-35, 230 S.E. 2d at 539-40, this Court said:

> In connection with the issue of defendant's statement to the police, defendant contends that the trial court should have submitted the question of voluntariness to the jury. Counsel for defendant, citing *State v. Hill*, 276 N.C. 1, 170 S.E. 2d 885 (1969), concedes that the present law in North Carolina does not require the issue of voluntariness of the confession to be submitted to the jury, but requests that this Court reconsider its position on this question. In *State v. Hill, supra*, at 14-15, 170 S.E. 2d at 894, Justice Higgins, speaking for the Court, said:
>
>> 'Defense counsel also argue that the voluntariness of the confession should have been one of the issues submitted to the trial jury. Under North Carolina procedure, voluntariness is a preliminary question to be passed on by the trial judge in the absence of the jury. *State v. Vickers*, 274 N.C. 311, 163 S.E. 2d 481; *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1; *State v. Barnes*, 264 N.C. 517, 142 S.E. 2d 344. This procedure, we think, is approved by the Supreme Court of the United States. In *Jackson v. Denno*, 378 U.S. 368 (Footnote 19), the Court uses this language: ". . . [T]he states are free to allocate functions between the judge and the jury as they see fit." '

We see no reason to change this well established rule and refrain from doing so in this case.

In *Inman,* the United States Court of Appeals for the Fourth Circuit not only held that the trial judge must pass upon the voluntariness of a confession, but further held that in federal prosecutions within the Fourth Circuit final appraisal of the voluntariness of a confession should be left to the jury. With respect to the question of voluntariness being determined solely by the trial judge, the Court said: "There is, concededly, authority at least implying that this procedure in State prosecutions is not Constitutionally impermissible." 352 F. 2d at 955-56 (citing *Jackson v. Denno,* 378 U.S. 368 (1964)).

We adhere to our decision in *Miley;* therefore, the assignments of error are overruled.

### E.

[8] Defendants Lester Barnett and Wilder assign as error the trial court's instructions to the jury on the question of "common purpose." There is no merit in these assignments.

The trial court's charge to the jury included the following instruction:

Again, in determining guilt or innocence as to this crime [murder], the court instructs you that for a person to be guilty of a crime, it is not necessary that he, himself, do all the acts necessary to constitute the crime.

*If two or more persons in the presence of each other act together with a common purpose to commit the crime of murder,* each of them is held responsible for the acts of the others done in the commission of the crime. Each is responsible for all the acts committed by the others in the execution of the common purpose which are the natural or probable consequence of the unlawful combination of the undertaking. [Emphasis added.]

Defendants except to that part of the instruction in italics. They argue that there was no evidence tending to show that there was a common purpose on the part of two or more of the defendants to commit the crime of murder; that, at most, the evidence tended to show a common purpose to commit the offense of armed robbery.

We disagree. An essential element of armed robbery, indeed the heart of the offense, is that a firearm or other dangerous weapon be used "whereby the life of a person is endangered or threatened." G.S. 14-87. This act is by its nature inherently dangerous to human life; and if this danger against which the statute is aimed occurs and the robber kills, the act is ordinarily murder under the felony-murder rule. Here *all three* defendants were armed with firearms—the Barnetts with pistols and Wilder with a shotgun. There was evidence that *both* of the Barnetts shot Wallace[5] and Wilder shot at the escaping witness, Cheryl Little. Because of these facts and because of the nature of the crime of armed robbery, we think the jury could infer, although it would not have been compelled to do so, that all three defendants had a common purpose to murder if murder became necessary during the course of the robbery to overcome the victim's resistance, to eliminate the victim or others as potential witnesses, or to aid in their escape. We find no error, therefore, in the instruction.

The assignments are overruled.

F.

Defendants Lester Barnett and Wilder assign as errors the denial of their motions to set aside the verdicts as to them and to grant them new trials. These assignments have no merit.

As the grounds for these assignments, defendants depend on the soundness of their contentions hereinabove discussed. Having rejected all of these contentions, we conclude that defendants have shown no support for the assignments; hence they are overruled.

IV.

ERRORS ASSIGNED ONLY BY DEFENDANT WILDER.

A.

In his argument on his fifth assignment of error, defendant Wilder contends "it was prejudicial error for the court in its in-

---

5. Ballistics evidence tended to show that some projectiles found in Wallace's body came from the pistol used by Lester Barnett and other projectiles found in Wallace's body came from the pistol used by Ricky Barnett.

structions to the jury to refer to Wilder as 'the other' in posses-
sion of a pistol when there was no evidence to support such in-
struction." This assignment has no merit.

With respect to this assignment, the court charged the jury
as follows:

> That sometime in the early morning hours, three Black
> males came to the store; one remained outside with a sawed-
> off shotgun; two went into the store. The one remaining out-
> side was Carl Anthony Wilder. That the two who went into
> the store were Lester and Ricky Barnett.

> The two going into the store each had pistols. And, that
> the—That Chalmers Wallace was shot five times. That four
> of the bullets were recovered. One was attributed to a .32
> caliber pistol in the possession of the Barnett brothers. (That
> three of the bullets were attributed to a .22 pistol in the
> possession of the other.)

Defendant Wilder takes exception to the last sentence of the
challenged instruction, arguing that "the other" must have re-
ferred to him as the one in possession of the .22 pistol. We reject
this argument. We think it is clear that the court was referring to
"the other" Barnett. In the first paragraph quoted above the
court clearly referred to defendant Wilder as the one who re-
mained outside of the store with a shotgun. The second paragraph
clearly relates to defendants Barnett, one of whom had a .32
pistol while the other had a .22 pistol.

The assignment is overruled.

### B.

[9]  In his seventh assignment of error, defendant Wilder con-
tends that the trial court erred in its jury instructions relating to
acting in concert. This assignment has no merit.

With respect to defendant Wilder, the trial court charged the
jury as follows:

> (If you find from the evidence, and beyond a reasonable
> doubt, as to the defendant, Carl Anthony Wilder, that on or
> about the 12th day of August, 1980, the defendant, Carl
> Wilder, acting together with Lester Barnett and Ricky Bar-

nett, for the purpose of aiding them in the commission of a robbery,)

WILDER EXCEPTION NO. 23

knowingly stood outside the Fast Fare Store with a sawed-off shotgun, at the time that Ricky Barnett and Lester Barnett had in their possession firearms, and took and carried away money from the person or presence of Chalmers H. Wallace, without his voluntary consent, by endangering or threatening Chalmers H. Wallace's life, with the use or threatened use of pistols, the defendants Ricky Barnett and Lester Barnett knowing that they were not entitled to take the money and intending at that time to deprive Chalmers H. Wallace of the use of that property permanently, that money permanently, then it would be your duty to return, as to the defendant Carl Anthony Wilder, a verdict of guilty of robbery with a firearm.

Defendant Wilder points out that the court earlier charged it would be the jury's duty to convict Lester Barnett if he acted together with Ricky Barnett, and Ricky if he acted together with Lester, but then charged that they should convict Wilder if he acted together with Lester *and* Ricky. He argues that the instructions were conflicting "as the jury was told to convict Wilder if he was found to have acted with Lester *and* Ricky, but the jury was only told to convict Ricky if he acted with Lester and to convict Lester if he only acted with Ricky. Wilder was left out of the instructions regarding Ricky and Lester, thus creating a conflict in the jurors' minds as to the issue of acting in concert."

We are not impressed with this argument. The court could have instructed the jury that if defendant Wilder were acting in concert with either of defendants Barnett he would be guilty. The requirement that the jury find that Wilder was acting in concert with both defendants Barnett imposed a greater burden on the state than it was required to meet and was beneficial to Wilder. He is not, therefore, in position to complain.

V.

ERROR ASSIGNED ONLY BY DEFENDANT RICKY BARNETT.

[10]   Defendant Ricky Barnett assigns as error the admission of testimony by Cheryl H. Little identifying him as one of the par-

ticipants in the robbery, and her testimony concerning her out-of-court identification of him through a photographic display. We find no merit in this assignment.

It is well established that "[i]dentification evidence must be excluded as violating a defendant's rights to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. White*, 307 N.C. 42, 45-46, 296 S.E. 2d 267, 269 (1982) (citing *Simmons v. United States*, 390 U.S. 377 (1968); *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982); *State v. Thompson*, 303 N.C. 169, 277 S.E. 2d 431 (1981); and *State v. Wilson*, 296 N.C. 298, 250 S.E. 2d 621 (1979)).

In the case at hand, the evidence presented on voir dire showed that Cheryl Little was requested by Officer Van Hoy to come to the police department. She was told that some people had been arrested in connection with the robbery and shooting. She was shown several sets of photographs but was not told photographs of any of the persons who had been arrested were in the group she received. Although the group contained photographs of all three defendants, she identified only a photograph of defendant Ricky Barnett. When she was at the Fast Fare she had a better opportunity to observe Ricky Barnett than she did the other defendants; she saw him face to face at a distance of only several feet. In selecting Ricky's photograph she stated that he was "the little one with the hat." She had previously described the smallest of the robbers as being about 5 feet 6 or 7. Ricky Barnett was approximately that height, while the other defendants were more than 5 feet 10 inches tall. Cheryl Little further testified that her in-court identification of defendant Ricky Barnett was based solely upon what she saw at the Fast Fare store and not on any photographs which she had seen of him.

Judge Johnson, after finding the above recited facts, concluded that Cheryl Little's identification of defendant Ricky Barnett was of independent origin and was "not tainted by any pretrial identification procedure so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law." He also concluded: "The pretrial photographic identification procedure involving the defendants was not so unnecessarily suggestive and conducive to irreparable

mistaken identification as to violate the defendants' rights to due process of law."

The findings of Judge Johnson are supported by the evidence and his conclusions are supported by his findings. This assignment of error is overruled.

Having considered all of the assignments of error argued by each defendant and finding no merit in any of them, we conclude that defendants received fair trials, free from prejudicial error.

No error.

Justices MITCHELL, MARTIN and FRYE did not participate in the consideration or decision of this case.